UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JESSICA SMITH, et al., on behalf of
themselves and those similarly situated,

       Plaintiffs,

v.

                                          Case No. 2:21-cv-194

SMITHFIELD FOODS, INC., et al.,

       Defendants.

## REPORT AND RECOMMENDATION

This Fair Labor Standards Act ("FLSA") claim is before the court on Plaintiffs' motion to conditionally certify a class of similarly situated employees, and permit court-supervised notice of opt-in rights to those persons. (ECF No. 50). Plaintiffs argue that Defendants[1] failed to pay them and similarly situated employees for work performed before or after their scheduled start or stop times, including for donning and doffing personal protective equipment ("PPE"). Pls.' Mem. Supp. Pls.' Mot. Conditional Certification (ECF No. 51, at 7) ("Pls.' Mem."). Defendants opposed the motion, ("Defs.' Resp.") (ECF No. 55), and

---

[1] Smithfield Foods, Inc., Smithfield Packaged Meat Corp., Smithfield Fresh Meats Corp., and Smithfield Distribution, LLC.

Plaintiffs replied, ("Pls.' Reply") (ECF No. 60). The court heard oral argument on the motion.

The matter was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. This Report concludes that Plaintiffs have failed to meet their burden to establish that the nationwide class they describe should be conditionally certified, and thus RECOMMENDS the court DENY Plaintiff's Motion for Conditional Certification (ECF No. 50).

## I.   BACKGROUND

Plaintiffs are production employees currently employed, or formerly employed, by Defendants at various pork processing, packaging, and distribution plants in the United States.[2] See Am. Compl. ¶ 27 (ECF No. 27, at 4). They seek to conditionally certify a nationwide class of similarly situated employees to pursue FLSA claims like the ones they allege. Id. ¶ 43 (ECF No. 27, at 4). Plaintiffs define the class as including all current and former production employees between April 13, 2018, and the present at

---

[2] Although Plaintiffs allege a class made up of current and former employees, all of the representative and opt-in plaintiffs are former employees. Smith was the only current employee when this action was originally filed in April 2021, Compl. (ECF No. 1), and she separated in June 2021, approximately two months before completing her declaration, Smith Decl. ¶ 1 (ECF No. 52-1, at 1).

the following companies: Smithfield Foods, Inc., Smithfield Packaged Meats Corp., Smithfield Fresh Meats Corp., and Smithfield Distribution LLC.   Id.

Plaintiffs allege that they are, or were, nonexempt employees denied overtime and other wages.   Id. ¶¶ 28, 34 (ECF No. 27, at 5).   In particular, Plaintiffs allege that they

> were only paid for work performed between their
> scheduled start and stop times, and were not paid for
> the following work performed before and after their
> scheduled start and stop times: a) changing into and out
> of their personal protective equipment, including but
> not limited to an insulated thermal bib, a shirt, pants,
> a helmet, a hairnet, a beard guard, gloves, steel toe
> boots, ear plugs and/or safety glasses; b) washing their
> hands, getting their work assignments and walking to
> their assigned area of the production floor; and/or
> c) performing their production work.

Id. ¶ 34.   Plaintiffs claim that these pay practices violated the FLSA, id. ¶ 48 (ECF No. 27, at 8), and that Defendants' violations were willful, knowing, and/or reckless, id. ¶ 50.   Defendants each deny they violated the FLSA.   Smithfield Food, Inc. Answer ¶ 54 (ECF No. 33, at 7); Smithfield Distribution LLC Answer ¶ 54 (ECF No. 38, at 6); Smithfield Fresh Meats Corp. Answer ¶ 54 (ECF No. 39, at 6); Smithfield Packaged Meats Corp. Answer ¶ 54 (ECF No. 40, at 6).

**A.   Plaintiff's Allegations and Evidence of Similarly Situated Putative Class Members.**

Plaintiffs' motion to conditionally certify the class is supported by declarations from representative plaintiffs Jessica

3

Smith ("Smith"), (ECF No. 52-1), David Kolb ("Kolb"), (ECF No. 52-2), and Christian Golightly ("Golightly"), (ECF No. 52-3). Plaintiffs also submitted declarations from thirteen opt-in plaintiffs. Pls.' Mem. Ex. 4 (ECF No. 52-4).

Smith worked as a knife operator in Tar Heel, North Carolina, from May 2017 until June 2021. Smith Decl. ¶ 1 (ECF No. 52-1, at 1). Smithfield Fresh Meats Corp. operates this Tar Heel plant. Id.; Defs.' Resp. Ex. A (ECF No. 55-1, at 2-3). Smith declares that she was compensated "only for work performed between [her] scheduled start and stop times." Smith Decl. ¶ 3 (ECF No. 52-1, at 1). She further declares the following:

> During my employment, Smithfield did not pay me for the time spent each day performing the following work before and after my scheduled start and stop times:
>
> a. Changing into and out of my personal protective equipment, including but not limited to an insulated thermal bib, a shirt, pants, a helmet, a hairnet, gloves, steel toed boots, ear plugs, and/or safety glasses;
>
> b. Getting my work assignments and walking to my assigned area of the production floor; and/or
>
> c. Performing my production work.

Id. ¶ 4 (ECF No. 52-1, at 1-2). Smith states that "Smithfield required [her] to perform this unpaid work before and after [her] scheduled shift," which "work was integral and indispensable to [her] principal work activities." Id. ¶¶ 5-6 (ECF No. 52-1, at 2). She further declares that "Smithfield's practice, policies,

and procedures" denied her compensation, and other employees were similarly treated. Id. ¶¶ 8-9.

Kolb worked as a quality assurance technician in Sioux Falls, South Dakota, from August 2019 until April 2020. Kolb Decl. ¶ 1 (ECF No. 52-2, at 1). Smithfield Packaged Meats Corp. operates this Sioux Falls plant. Id.; Defs.' Resp. Ex. A (ECF No. 55-1, at 4-8). Golightly[3] worked as a forklift operator in Indianapolis, Indiana, from May to October 2018. Golightly Decl. ¶ 1 (ECF No. 52-3, at 1). Smithfield Distribution LLC operates this Indianapolis plant. Id. Both the Kolb and Golightly declarations contain nearly word-for-word identical allegations regarding Defendants' pay practices and policies as those included in the Smith declaration.[4] Compare Smith Decl. (ECF No. 52-1), with Kolb Decl. (ECF No. 52-2), and Golightly Decl. (ECF No. 52-3).

Thirteen opt-in plaintiffs also signed declarations. Pls.' Mem. Ex. 4 (ECF No. 52-4). The body of all thirteen declarations are also identical with respect to the allegedly illegal pay practices, requiring only that opt-in plaintiffs identify unique personal information (i.e., position, dates of employment, and plant). Id. The opt-in plaintiffs held the following jobs:

---

[3] The Golightly declaration is unsigned.

[4] Both Kolb and Golightly allege that they wore a beardnet. Kolb Decl. ¶ 4(a) (ECF No. 51-2, at 1-2); Golightly Decl. ¶ 4(a) (ECF No. 51-3, at 1-2).

material handler, bacon slicer, maintenance mechanic, general production, machine operator (including "tux opr," "hot dog/flexi cell operator," and "cliff hanger machine operator"), cut floor, and arranger. Pls.' Mem. Ex. 4 (ECF No. 52-4). The opt-in plaintiffs' declarations contain similar allegations regarding their employment as appear in the representative plaintiffs' declaration. Id. In particular, the opt-in plaintiffs all allege that they were not compensated for the time spent changing into and out of their PPE,

> including but not limited to an insulated thermal bib,
> a shirt, pants, a helmet, a hairnet, a beard guard,
> gloves, steel toed boots, ear plugs and/or safety
> glasses.

Pls.' Mem. Ex. 4 ¶ 4(a) (ECF No. 54-2). The following plants are represented among the thirteen opt-in plaintiffs: St. Charles, Illinois; Greenfield, Indiana; Lincoln, Nebraska; Kinston, North Carolina; Tar Heel, North Carolina; Wilson, North Carolina; and Smithfield, Virginia. Id.

## B. Defendants' Evidence of Dissimilarity Between Putative Class Members.

Three operating companies are named in this litigation, and each company operates several plants: Smithfield Fresh Meats Corp. operates ten plants; Smithfield Packaged Meats Corp. operates thirty plants; and Smithfield Distribution, LLC, operates five

6

plants.[5]  Defs.' Resp. Ex. A (ECF No. 55-1).  The proposed
nationwide collective action Plaintiffs allege against all three
companies would potentially include over 68,800 production
employees.  See id. (listing numbers of current and past
employees).  Defendants have produced forty-five declarations from
plant management detailing their plants' policies and practices
for compensating employees for changing clothing and other related
activities, as well as specific facts regarding certain named and
opt-in plaintiffs.[6]  See Defs.' Resp. Exs. B-X, Z-UU (ECF Nos. 55-2
to 55-15, 56-1 to 56-32).

### 1.  Policies and Practices Applicable to Defendants' Union and Non-Union Plants.

Employees at twenty-one of the plants are represented by
unions and are covered by various Collective Bargaining Agreements
("CBAs").  Defs.' Resp. Ex. A (ECF No. 55-1).  These CBAs vary in
their donning and doffing provisions.  See Defs.' Resp. Ex. Y (ECF
No. 56-10) (summarizing donning and doffing language).  For
example, at the plant in Tar Heel, North Carolina, employees who

---

[5] Defendants assert that the total number of plants is forty-six, Defs.'
Resp. (ECF No. 55, at 5), but they only list forty-five plants in their
evidence, see Defs.' Resp. Ex. A (ECF No. 55-1).  The distinction between
forty-five and forty-six plants is immaterial for the recommended
disposition, and this R&R refers to forty-five facilities without
deciding how many Defendants actually own and operate.

[6] For the sake of brevity, not all plants and plaintiffs are discussed.
I include only a representative sample as necessary for the recommended
disposition.

wear PPE are paid for certain time allotments throughout the day, while all other employees receive "three (3) minutes for any such activities during the day." Id. at 3. In Springfield, Massachusetts, the company "allow[s] five (5) minutes at the beginning and end of each shift for donning and doffing of Company-provided and required PPE." Id. In Crete, Nebraska, employees receive an allowance of $8.40 per week, which includes $3.00 of "compensable donning and doffing time . . . not otherwise covered by" the CBA. Id. at 5. At some plants whose CBA provisions do not directly address donning and doffing, managers certified that it was otherwise compensated. See, e.g., Defs.' Resp. Ex. M ¶ 8-9 (ECF No. 55-13, at 3) (affirming that employees dressed and removed PPE only while clocked in).

Employees at the remaining non-unionized plants are not covered by CBAs. See Defs.' Resp. Ex. A (ECF No. 55-1). However, the policies and practices are similarly varied. For example, in Kinston, North Carolina, "employees . . . engage in any necessary donning, and doffing, and related activities of any items they wear to perform their job after punching in and before punching out . . . ." Defs.' Resp. Ex. E ¶ 5 (ECF No. 55-5, at 2). In Clinton, North Carolina, employees are "compensated pursuant to a 'matrix' based upon an employee's protective clothing worn, locker location, and job location," which had "27 different options for compensating employees for donning, doffing, hand washing, walking

8

to and from a work station, and related activities." Defs.' Resp. Ex. F ¶ 5 (ECF No. 55-6, at 2).

### 2. Evidence Pertaining to Specific Named and Opt-In Plaintiffs.

Defendants also offered specific evidence to contradict the allegations in Plaintiffs' declarations. For example, according to Defendants' evidence, some plaintiffs' pay records reflect payments for donning and doffing, contrary to their representations. Smith was allegedly paid "prep time of 10 minutes per day as required" by the applicable CBA, and her records show 0.83 hours of "prep" time for the weekly pay period ending April 15, 2018. Defs.' Resp. Ex. G ¶ 11 (ECF No. 55-7, at 4-5). Opt-in plaintiff Tamesha Gholston's payroll records reflect that she was paid "Prep Time/PPE Allowance," Defs.' Resp. Ex. H (ECF No. 55-8, at 116), as does opt-in plaintiff Stephanie Randolph's payroll record, Defs.' Resp. Ex. Z (ECF No. 56-11, at 9).

Also as alleged in Defendants' declarations and evidence, certain plaintiffs were not required to wear some or all of the PPE described in their declarations. See, e.g., Defs.' Resp. Ex. B ¶ 11 (ECF No. 55-2, at 4) (stating "Kolb was not required to wear insulated thermal bibs"). Certain plaintiffs were permitted to wear clothing from home. See, e.g., Defs.' Resp. Ex. E ¶ 8 (ECF No. 55-5, at 2-3) (stating plaintiff "was allowed to wear his pants and shirt to and from home each day").

Lastly, Defendants allege that they never employed some of the opt-in plaintiffs, namely Alfonzo Mack and Carnelias Jenkins. Defs.' Resp. Ex. G ¶ 12 (ECF No. 55-7, at 5); Defs.' Resp. Ex. KK ¶ 9 (ECF No. 56-22, at 3). Opt-in plaintiff Wendell Withers also allegedly agreed to release all claims that he had under the FLSA, as well as other applicable laws, in a settlement agreement he executed in 2020 as part of a different FLSA wage claim. Defs.' Resp. Ex. Z (ECF No. 56-11, at 23, 26).

### 3. Litigation Costs as Estimated by Dr. Jeffery E. Fernandez.

Dr. Jeffrey E. Fernandez ("Dr. Fernandez") is a professional engineer and certified professional ergonomist. Fernandez Decl. ¶ 4 (ECF No. 56-33, at 2). He is an expert who "conduct[s] time analysis to determine the time it takes employees to perform different donning, doffing, and other activities" for cases like this one. Id. ¶ 8 (ECF No. 56-33, at 3); see also id. Ex. B (ECF No. 56-33, at 48-49) (listing fifteen cases between 2015 and 2021). Dr. Fernandez estimates that a study in this case, across all facilities operated by Defendants, would take a five-person team twelve to sixteen months for data collection and an additional fourteen to eighteen months for analysis. Id. ¶ 19 (ECF No. 56-33, at 5). He estimates the total cost for such a study would exceed $7.8 million. Id. ¶ 18.

## C.  Plaintiffs' Motion for Class Certification.

On September 16, 2021, Plaintiffs moved to conditionally certify the nationwide class. (ECF No. 50). Plaintiffs argued that they had met their "modest burden of showing that they are similarly situated to the potential opt-in plaintiffs" as required under 29 U.S.C. § 216(b). Pls.' Mem. (ECF No. 51, at 6). Defendants opposed conditional class certification, arguing that (1) Plaintiffs cannot show that they are challenging a common policy; (2) the putative class is subject to defenses requiring individualized proof; and (3) the class is so large as to be unmanageable at trial, and discovery will be unduly burdensome. Defs.' Resp. (ECF No. 55, at 4, 20, 26). Plaintiffs replied. (ECF No. 60). On December 2, 2021, the court heard oral argument. It is upon these arguments and evidence that I recommend disposition.

## II.  LEGAL STANDARD

The FLSA makes employers liable to employees for unpaid overtime compensation in violation of its provisions. 29 U.S.C. § 216(b); see also id. § 207. A wronged employee can maintain an action "to recover the liability . . . for and in behalf of himself . . . and other employees similarly situated." Id. § 216(b). The collective action serves the objectives of the FLSA "by facilitating a resolution in a single proceeding of claims stemming from common issues of law and fact, and . . . aid[ing] in the vindication of plaintiffs' rights by lowering the individuals'

11

costs by pooling claims and resources." Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).

To join a suit as a party plaintiff, the other employees must be "similarly situated" and "give [their] consent in writing" to join the suit ("opt-in"). See 29 U.S.C. § 216(b); Allen v. Cogent Commc'ns, Inc., No. 14cv459, 2014 WL 4270077, at *2 (E.D. Va. Aug. 28, 2014). Neither the FLSA nor the Fourth Circuit have defined "similarly situated." Allen, 2014 WL 4270077, at *2. At their discretion, district courts "conditionally certify a collective action . . . [and] authorize and manage notice to prospective class members." Edwards v. Optima Health Plan, No. 20CV192, 2021 WL 1174724, at *3 (E.D. Va. Mar. 29, 2021) (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169-71 (1989)). The benefits of collective actions "depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170.

Assembling a class under § 216(b) involves two stages: notice (or conditional certification), and decertification. Stone v. SRA Int'l, Inc., No. 14cv209, 2014 WL 5410628, *2 (E.D. Va. Oct. 22, 2014). Typically, the discovery process divides the two stages. Id.

## A.   Stage One: Notice

At the first stage, the court decides whether to provide initial notice to potential collective action members. Choimbol

v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). "[D]istrict courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs." Hoffmann-La Roche, 493 U.S. at 169. If authorized, the court "must appear neutral in the notice." Edwards, 2021 WL 1174724, at *3 (citing id. at 174).

Plaintiffs carry the evidentiary burden at this stage. Allen, 2014 WL 4270077, at *2. They must make "some preliminary factual showing that a similarly situated group of potential plaintiffs exists." Purdham v. Fairfax Cnty. Pub. Schs., 629 F. Supp. 2d 544, 549 (E.D. Va. 2009) (quoting D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995)). They must show that "there are other employees . . . who desire to 'opt-in'" to the class. Purdham, 629 F. Supp. 2d at 552 (quoting Dybach v. Fla. Dept. of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991)). But they must also show that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." Choimbol, 475 F. Supp. 2d at 564 (emphasis added). Notice is permissible when claims "do not require substantial individualized determinations for each class member . . . ." Purdham, 629 F. Supp. 2d at 549; see also MacGregor v. Farmers Ins. Exch., No. 10-CV-03088, 2012 WL 2974679, at *2 (D.S.C. July 20, 2012).

Plaintiff's burden is "relatively lenient" because the court often has only "minimal evidence" without the aid of discovery.[7] Purdham, 629 F. Supp. 2d at 548 (citations omitted). Plaintiffs need not show "conclusively" that their proposed class exists. Adams v. Citicorp Credit Servs., 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (quoting Mitchel v. Crosby Corp., No. DKC 10-2349, 2012 WL 4005535, at *2-3 (D. Md. Sept. 10, 2012)). Instead, they must provide only a "modest factual showing" of their commonality. Choimbol, 475 F. Supp. 2d at 563. The predominant focus here is on legal issues, and "the plaintiffs' and prospective class members' circumstances do not need to be factually identical." Edwards, 2021 WL 1174724, at *4.

However, plaintiffs' burden is "not invisible." Purdham, 629 F. Supp. 2d at 548 (quoting Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); see also Kirkpatrick v. Cardinal Innovations Healthcare Sols., No. 16CV1088, 2017 WL 3841858, at *4 (M.D.N.C. Sept. 1, 2017) ("The standard for conditional certification . . . is not a 'rubber stamp.'" (quoting Adams, 93 F. Supp. 3d at 453). "Mere allegations will not suffice;

---

[7] "Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action, see 29 U.S.C. § 256(b), courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding, typically before any significant discovery, upon an initial showing that the members of the class are similarly situated." Houston, 591 F. Supp. 2d at 831.

some factual evidence is necessary." <u>Purdham</u>, 629 F. Supp. 2d at 548 (quoting <u>Bernard v. Household Int'l, Inc.</u>, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002)).  "[P]laintiffs must set forth more than vague allegations with meager factual support regarding a common policy to violate the FLSA." <u>Adams</u>, 93 F. Supp. 3d at 453 (quoting <u>Mitchel</u>, 2012 WL 4005535, at *2-3).

## B.   Stage Two: Decertification

If the court approves conditional certification at the notice stage, the defendant can thereafter file a motion for decertification, "usually after discovery is virtually complete." <u>Choimbol</u>, 475 F. Supp. 2d at 563.  Upon such a motion, the court applies a "heightened fact specific standard" to determine whether the collective plaintiffs are sufficiently similarly situated to warrant proceeding as a class. <u>Id.</u>  If they are, the case continues to trial.  <u>Id.</u>  If they are not, the court decertifies the collective action, and the original plaintiffs may pursue their individual claims.  <u>Id.</u>  Plaintiffs retain the burden at this stage.  <u>Pelczynski v. Orange Lake Country Club, Inc.</u>, 284 F.R.D. 364, 368 (D.S.C. 2012) (citing <u>Gionfriddo v. Jason Zink, LLC</u>, 769 F. Supp. 2d 880, 886 (D. Md. 2011)).

## III. <u>ANALYSIS</u>

The court does not "resolve factual disputes or decide substantive issues" at conditional certification. <u>Edwards</u>, 2021 WL 1174724, at *3 (citing <u>McNeil v. Faneuil, Inc.</u> (<u>Faneuil II</u>),

15

No. 15cv81, 2016 WL 11673838, at *3 (E.D. Va. Aug. 3, 2016)); see also Gregory v. Belfor USA Grp., Inc., No. 12cv11, 2012 WL 3062696, at *5 (E.D. Va. July 26, 2012) (declining "invitation to engage in resolving factual disputes, decide substantive issues going to the merits of the case, or make credibility determinations") (quoting Hargrove v. Ryla Teleservices, Inc., No. 11cv344, 2012 WL 489216, at *9 (E.D. Va. Jan. 3, 2012)), report and recommendation adopted by 2012 WL 463442 (E.D. Va. Feb. 13, 2012).   Instead, the court ascertains whether "plaintiff has made the requisite showing, without reference to what defendant may have sought to inject into the record."   Jibowu v. Target Corp., 492 F. Supp. 3d 87, 119 (E.D.N.Y. 2020) (quoting Tello v. A.N.G. Diner Corp., No. 17 CV 749, 2018 WL 840045, at *5 (E.D.N.Y. Feb. 12, 2018)).   However, the court will also consider any undisputed evidence Defendants have contributed.   Cf. Helmert v. Butterball, LLC, No. 08CV00342, 2009 WL 5066759, at *7 (E.D. Ark. Dec. 15, 2009) (allowing consideration of "pleadings and any affidavits" on both sides); Simons v. Pryor's, Inc., No. 11-cv-0792, 2011 WL 6012484, at *5 (D.S.C. Nov. 30, 2011) (considering defendants' unchallenged evidence of distinct corporations in restricting conditional certification); Salazar v. Agriprocessors, Inc., No. 07-CV-1006, 2008 WL 782803, at *7 (N.D. Ia. Mar. 17, 2008) (considering defendants' evidence when plaintiffs submitted none).

After considering the record on conditional certification in this case, I find that Plaintiffs have not met their "modest factual" burden to show that members of the putative nationwide class are "similarly situated." 29 U.S.C. § 216(b); Choimbol, 475 F. Supp. 2d at 563.   First, Plaintiffs' declarations are insufficient to support a nationwide class against multiple companies operating over forty food processing plants. Plaintiffs have also not shown that they are challenging "a common policy or plan that violated the law," particularly considering the plethora of applicable CBAs among the plants encompassed in Plaintiffs' putative class.   Choimbol, 475 F. Supp. 2d at 564.   Lastly, the breadth and expense of the proposed discovery and the potential difficulties implicit in managing a trial of the putative class, when compared against Plaintiffs' meager evidence of similarity, cautions against exercising discretion here.   I thus RECOMMEND that the district court DENY Plaintiffs' Motion for Conditional Certification (ECF No. 54).

## A. Plaintiffs' Declarations Are Insufficient to Grant Conditional Certification.

Plaintiffs seek conditional certification here based only on the allegations in their complaint and the declarations of the representative and opt-in plaintiffs.   See Pls.' Mem. (ECF No. 51, at 6-7).   However, these declarations do not provide sufficient factual support to satisfy Plaintiffs' burden in this case.   First,

because the declarations are internally inconsistent and virtually identical, they amount to only "meager factual support" for conditional certification.  <u>Adams</u>, 93 F. Supp. 3d at 453 (quoting <u>Mitchel</u>, 2012 WL 4005535, at *3).  Second, Plaintiffs have not produced caselaw showing that analogous conditional certification has ever been granted based only on similar declarations.

### 1.   Plaintiffs' Form Declarations are Identical, Facially Inconsistent, and Fail to Credibly Aver Substantial Similarity Among Putative Class Members.

The seventeen identical form declarations Plaintiffs submitted are facially inconsistent and therefore unhelpful to the court.  It is improbable in the first instance that each plaintiff had an identical employment experience and wore the same PPE despite having different responsibilities and working for different plants and different companies.  And Plaintiffs failed to rebut or even substantially address Defendants' overwhelming evidence of dissimilarity.

In the declarations, all thirteen opt-in plaintiffs state they wore the <u>same</u> PPE, which <u>exactly matches</u> the PPE listed in the Complaint, without a single variation.  <u>Compare</u> Pls.' Mem. Ex. 4 ¶ 4(a) (ECF No. 54-2), <u>with</u> Am. Compl. ¶ 37 (ECF No. 27, at 6). The representative plaintiffs' declarations also contain substantially similar PPE allegations.  <u>See</u> Smith Decl. ¶ 4 (ECF No. 52-1, at 1-2); Kolb Decl. ¶ 4 (ECF No. 52-2, at 1-2); Golightly Decl. ¶ 4 (ECF No. 52-3, at 1-2).  Other allegations for both types

of plaintiffs are identical. However, plaintiffs held diverse employment roles. See Pls.' Mem. Ex. 4 (ECF No. 54-2) (listing job titles for opt-in plaintiffs, including "Bacon Slicing" and "Maintenance mechanic").

The facial inconsistency in the PPE allegations can be highlighted by the simple observation that the several female opt-in plaintiffs likely did not wear beard guards, despite declaring that they did.[8] Pls.' Mem. Ex. 4 ¶ 4(a) (ECF No. 54-2); Tr. 36:5-14 (ECF No. 71). This is more than lack of precision. Tr. 36:10-11 (claiming that "it's not the most precise for each individual employee"). The facial inconsistency in each declaration undermines the declarations' ultimate usefulness and inhibits the court's ability to determine substantial similarity.[9] Cf. Salazar, 2008 WL 782803, at *7 (denying conditional certification in case

---

[8] Plaintiffs offer a different interpretation, arguing that concluding the PPE list with "and/or" places all PPE items in the alternative, suggesting that each declarant may have worn some or all of the listed items. Tr. 36:5-14 (ECF No. 71). However, this interpretation would also present a challenge: for example, one plaintiff might have worn only boots, and another only a hairnet, but the court would not know which or who. Failing to exclude unworn PPE (even if not a misrepresentation) diminishes the usefulness of all the declarations in assessing similarity. This analysis remains the same under Plaintiffs' interpretation.

[9] Plaintiffs imply here and elsewhere that the court cannot make any factual findings in connection with this motion. See Tr. 9:24-10:7. However, while the court does not resolve factual disputes at this stage, see Edwards, 2021 WL 1174724, at *3 (citing Faneuil II, 2016 WL 11673838, at *3), the court must determine whether putative plaintiffs are similarly situated, 29 U.S.C. § 216(b). This requires some factual findings.

without affidavits, and finding it significant that "employees. . . do not wear the PPE as alleged by Plaintiffs").

Plaintiffs insist that at this stage, they are permitted to rely on "boilerplate" language, Pls.' Reply (ECF No. 60, at 4-5), and not required to tailor the declarations to the individual employees, see Tr. 35:13-14; 37:5-8 (ECF No. 71). Indeed, some courts have accepted "declarations [that] are very similar" because "one would expect Plaintiffs subject to a common FLSA violation to have similar, and perhaps identical, experiences." Edwards, 2021 WL 1174724, at *6; Deakin v. Magellan Health, Inc., 328 F.R.D. 427, 435 (D.N.M. 2018) ("[W]hile the declarations are almost identical, this point would not support denial of conditional certification."). Those decisions generally concern a single job description or exemption classifications. Edwards, 2021 WL 1174724, at *2, *6; Deakin, 328 F.R.D. at 432-33, 435. The only case Plaintiffs cite in their Reply for the proposition that the court can accept "boilerplate, cookie cutter declarations" is McNeil v. Faneuil (Faneuil I), No. 15cv81, 2016 WL 11673836, at *4 (E.D. Va. Mar. 2, 2016).[10]   See Pls.' Reply (ECF

---

[10] Plaintiffs instead cite other caselaw in support of their argument that scrutinizing "cookie cutter declarations" constitutes a credibility determination. Pls.' Reply (ECF No. 60, at 4-5) (quoting Gregory, 2012 WL 3062696, at *5 (declining to "make credibility determinations" (quoting Hargrove, 2012 WL 489216, at *9)). However, as discussed below, observing the declarations' similarity does not require a credibility determination, and thus Plaintiffs' caselaw does not address the issue.

No. 60, at 5) (quoting id.).  That case involved a class comprised
entirely of call-center workers.  Faneuil I, 2016 WL 11673836, at
*1.

But this is a donning and doffing case -- and one seeking to
reach forty-five different facilities in nineteen different states
and approximately 68,800 employees, Defs.' Resp. Ex. A (ECF No.
55-1), with different employment responsibilities, Pls.' Mem. Ex.
4 (ECF No. 54-2).  In Pacheco v. Boar's Head Provisions Co., the
court denied conditional certification because "[e]ach department
has different requirements for protective equipment," 671 F. Supp.
2d 957, 963 (W.D. Mich. 2009), and the plaintiffs "put on different
items, at different times, in different places, all depending on
their job duties and their own personal practices and preferences,"
id. at 966 (quoting Gatewood v. Koch Foods, No. 07CV82, 2009 WL
8642001, at *15 (S.D. Miss. Oct. 20, 2009)); see also Lugo v.
Farmer's Pride Inc., 737 F. Supp. 2d 291, 302-04 (E.D. Pa. 2010)
(finding that "the variations in the amount of time workers may
need to don and doff their PPE" created "too many individualized
inquiries" and decertifying class).  I would expect the PPE
required for a material handler in Greenfield, Indiana, would
differ from that of a bacon slicer in Wilson, North Carolina.
Pls.' Mem. Ex. 4 (ECF No. 54-2).  Ignoring this reality would cede
the court's gatekeeping function.  See Kirkpatrick, 2017 WL

21

3841858, at *4 ("The standard for conditional certification . . . is not a 'rubber stamp.'" (quoting Adams, 93 F. Supp. 3d at 453)).

Beyond the declarations' overinclusive description of PPE, the general employment experiences of plaintiffs would also differ to some degree. Yet each declaration alleges an identical experience, including the general conclusion that each purported plaintiff "observed that Smithfield Foods did this to other manufacturing employees," without any allegations of facts, circumstances, or observations specific to a single employee. Pls.' Mem. Ex. 4 ¶ 7 (ECF No. 54-2). For the opt-in plaintiffs, the declarations contain slots for the plaintiff's unique identifiers, including job position, dates of employment, and plant location. See id. Such a fill-in-the-blank approach "suggest[s] that the declarants signed them without significant reflection." Yerger v. Liberty Mut. Grp., Inc., No. 11-CV-238, 2011 WL 5593151, at *5 (E.D.N.C. Nov. 15, 2011) (discussing "declarations essentially recit[ing] the same language"). Although counsel did not take a fill-in-the-blank approach to the representative plaintiffs' declarations, they are also suspiciously identical.

Recommending that Plaintiffs have failed to satisfy their burden because the declarations are identical and internally inconsistent does not mean that I have "resolve[d] factual disputes or decide[d] substantive issues." Edwards, 2021 WL 1174724, at *3

(citing Faneuil II, 2016 WL 11673838, at *3); see also Tr. 9:24-10:2 (ECF No. 71).  To be clear, I do not recommend finding that the declarations are false in any particular alleged.  Despite Defendants' detailed declarations alleging that plaintiffs' experiences are distinct and their allegations of non-payment contradicted by contemporaneous records, see, e.g., Defs.' Resp. Exs. B-X, Z-UU (ECF Nos. 55-2 to 55-15, 56-1 to 56-32), I accept as true Plaintiffs' declarations that they were not paid as alleged and that they observed similar treatment of their co-workers. Although I do not resolve conflicts between these allegations and Defendants' declarations,[11] much of the Defendants' evidence stands unrebutted and may be considered along with Plaintiffs' allegations in determining conditional certification.  Because Plaintiffs' declarations are identical and inconsistent on their face, they provide only "meager factual support" on the instant question. Adams, 93 F. Supp. 3d at 453 (quoting Mitchel, 2012 WL 4005535, at *3).

---

[11] Considering such declarations would approach making an improper factual determination.  See Edwards, 2021 WL 1174724, at *3 (citing Faneuil II, 2016 WL 11673838, at *3); cf. Benavides v. Serenity Spa NY Inc., No. 15-CV-9189, 2017 WL 3835880, at *5 (S.D.N.Y. Sept. 1, 2017) (collecting cases refusing to consider an employer's affidavits), class decertified by 2018 WL 2383144 (S.D.N.Y. 2018).

**2.   Caselaw Does Not Show That Nationwide Conditional Certification Is Appropriate Here Based Only on These Declarations.**

Plaintiffs argue that courts have conditionally certified classes like this one based only on affidavits and declarations. See Pls.' Reply (ECF No. 60, at 3) (quoting Shillingford v. Astra Home Care, Inc., 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) ("[A]n FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit.")). But Plaintiffs' putative class is easily distinguishable from all the cases they cite.[12] I discuss four broad bases to distinguish these precedents, including that no case they cited conditionally certified a nationwide class across forty-five plants owned by multiple companies with different employee job descriptions among each. Furthermore, most of Plaintiffs' caselaw involves FLSA exemptions, not donning and doffing pay for non-exempt production workers in a manufacturing plant. As no court permitted such a class based only on declarations,[13] I similarly do not recommend granting conditional certification here.

_____

[12] While I have reviewed every case Plaintiffs submitted on this point, not all are cited in this R&R.

[13] Plaintiffs had an additional opportunity after the hearing to identify caselaw specifically analogous to this one: that is, a nationwide class of various production employees litigating against multiple companies for donning and doffing violations.  Tr. 37:9-24 (ECF No. 71); see also id. 12:8-12 (noting that prior briefing did not include "case[s] where various manufacturing facilities owned by multiple companies were certified").  Although Plaintiffs responded, Pls.' Notice Suppl.

### i.   Nationwide Class

First, certification of a nationwide class is rare.   Courts are generally more inclined to certify classes across a single state or region.   See, e.g., Leon v. Diversified Concrete LLC, No. 15-6301, 2016 WL 2825073, at *1 (E.D. La. May 13, 2016) (granting conditional certification against one company operating in the New Orleans, Baton Rouge, and Mississippi Gulf coast regions); Chapman v. LHC Grp., Inc., 126 F. Supp. 3d 711, 724 (E.D. La. 2015) (denying nationwide conditional certification and limiting putative class "to office managers and administrative personnel in the state of Louisiana").

Certification of a nationwide class also generally requires personal knowledge that the policies extend to other facilities. In Bernard v. Household Intern., Inc., the court refused to certify a class outside Virginia based on the plaintiffs' declarations:

> [S]tatements regarding [employees] outside of the [plaintiffs' own] offices are prefaced with phrases such as "It is my understanding" and "I believe that." . . . There are not even any specific allegations regarding practices in other offices -- no names of employees or supervisors, and no indication that the problems alleged through first-hand knowledge in [these] offices exist elsewhere.   Without more, this court cannot find that the "similarly situated" criteria is met . . . for offices outside of Virginia.

---

Authority ("Pls.' Not.") (ECF No. 70), no cases were specifically analogous.  The additional cases Plaintiffs submitted are distinguished along with those cited in their original briefing.

Bernard, 231 F. Supp. 2d at 436. Similarly, in McNeil v. Faneuil, Inc. ("Faneuil I"), the court did not grant conditional certification because the plaintiffs submitted "declarations [that] only relay the declarants' personal knowledge of [their own employment] locations." Faneuil I, 2016 WL 11673836, at *4. The court held that "declarations based on beliefs are insufficient to show that class members may be similarly situated, [and] this evidence, by itself, cannot support a nationwide class." Id.; see also Braun v. Superior Indus. Int'l, Inc., No. 09-2560, 2010 WL 3879498, at *6 (D. Kan. Sept. 28, 2010) (denying conditional certification because plaintiffs lacked "knowledge of the pay practices" at the defendant's other facilities).

As in those cases, Plaintiffs' declarations lack any "specific allegations regarding practices in other" facilities based on "first-hand knowledge" of the alleged violations. Bernard, 231 F. Supp. 2d at 436. Plaintiffs merely state that they "observed that Smithfield did this to other production employees," and they "believe [they are] similarly situated to these employees." See, e.g., Smith Decl. ¶ 9 (ECF No. 52-1, at 2); see also Pls.' Mem. Ex. 4 ¶ 7 (ECF No. 52-4) ("I observed that Smithfield Foods did this to other manufacturing employees, and I believe I am similarly situated to these employees."). This vague language does not address any facility other than the one at which the specific declarant is employed. Based on the present factual

record, therefore, Plaintiffs have produced no evidence of pay practices at thirty-seven of Defendants' forty-five facilities. Cf. Yerger, 2011 WL 5593151, at *5 (denying conditional certification in part because "the declarants are an exceedingly small sample of the class that [the plaintiff] seeks to represent").

Nationwide classes are so broad that evidence beyond declarations is likely necessary to satisfy the plaintiffs' burden.[14]  After Faneuil I, for example, the plaintiffs bolstered their motion with "several policy documents produced by Defendant, Defendant's answers to interrogatories, and [seven] new declarations."  Faneuil II, 2016 WL 11673838, at *5.  The court then found that, "[w]ith the additional declarations and evidence . . . , Plaintiff has made a colorable claim that a class of similarly situated plaintiff[s] exists not just in Virginia, but nationwide."  Id.  In this case, however, Plaintiffs have no evidence of any Defendant's policies and procedures beyond their declarations.  And Defendants have introduced extensive evidence that pay practices, job descriptions, and required PPE would vary

---

[14] The court is permitted to examine Plaintiffs' evidence relative to the size of the prospective class.  See Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 870-71 (S.D. Ohio 2005) (finding that plaintiff had not satisfied his burden "particularly in light of the fact that there are approximately 300 potential class members").  It is entirely infeasible that a nationwide class would be certified based upon a single affidavit. See Pls.' Reply (ECF No. 60, at 3).

widely among the plants.  Importantly, the plaintiff's evidence in Faneuil II showed these policies were applied nationwide by the single corporate defendant to the single class of employees -- namely, call-center workers.  Id.

### ii.  Multiple Companies Operating Forty-Five Plants

Furthermore, this case presents a unique factual scenario because Plaintiffs seek nationwide certification across forty-five plants operated by multiple companies.  Mot.  Conditional Certification (ECF No. 50); see also Am. Compl. ¶¶ 8-11 (ECF No. 27, at 2-3) (alleging Defendants' companies separately). Plaintiffs have submitted caselaw that conditional certification can be granted against a company with multiple facilities, but certification is almost universally granted only against a single company.  See, e.g., Potter v. Dawn Food Prods., Inc., No. 20-10926, 2020 WL 6882908, at *1 (E.D. Mich. Nov. 24, 2020) (single bakery manufacturing company with eight facilities); Fortney v. Walmart, Inc., No. 19-cv-4209, 2021 WL 221996, *1 (S.D. Ohio Jan. 22, 2021) (single company operating over 3,000 retail stores); Nicks v. Peco Foods, Inc., No. 16-CV-01057, 2018 WL 1509370, at *1 (N.D. Ala. Mar. 27, 2018) (independent contractors for single parent company); Shillingford, 293 F. Supp. 3d at 404, 409 (third-party agency for home healthcare aides); Leon, 2016 WL 2825073, at *1 (commercial concrete construction company); Chapman, 126 F. Supp. 3d at 714 (home healthcare services company).

Certification is also common against a single facility or set of facilities, even when the defendant owns or operates more.[15] See, e.g., De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001) (concerning production employees only at the company's New Holland, Pennsylvania facility); Owens v. S. Hens, Inc., No. 07cv28, 2008 WL 723923, at *4 (S.D. Miss. Mar. 17, 2008) (finding that "the resolution . . . as framed in the context of a single facility, promotes judicial efficiency for the Court and the parties effected"). Plaintiffs cited Helmert v. Butterball, Pls.' Not. (ECF No. 70, at 5), but that is a case in which the district court certified only two facilities because no employees from a third plant had opted in. Helmert, 2009 WL 5066759, at *18 (finding plaintiffs lacked standing).

The reason conditional certification is particularly narrow among even commonly owned facilities is that facts can differ widely, as Defendants' evidence suggests here. See Defs.' Resp. (ECF No. 55, at 28) ("[T]hey are massive facilities that include recently constructed distribution centers, multi-building slaughterhouses, and facilities that prepare ready-to-cook or

---

[15] As Defendants observe, "Collective actions alleging FLSA violations related to donning and doffing at meat, poultry, or pork processing plants that have been certified have overwhelmingly been limited to those alleging violations at a single facility." Defs.' Resp. (ECF No. 55, at 5). In support, they cite twenty-seven cases across multiple circuits. Id. at 5 n.3.

ready-to-eat food products."). Plaintiffs produced no case in which opt-in notice was authorized to employees of such a diverse group of facilities.

### iii.   No Single Well-Defined Job Description

FLSA actions are mostly commonly certified when the putative class has similar job duties. See, e.g., Reid v. Timeless Restaurants, Inc., 09-CV-2481, 2010 WL 4627873 (N.D. Tex. Nov. 5, 2010) (waitstaff); Kopp v. Precision Broadband Installations, Inc., No. 20 CV 2779, 2021 WL 2688520 (N.D. Ohio June 30, 2021) (cable installers); Fortney, 2021 WL 221996 (automotive technicians); Nicks, 2018 WL 1509370 (live-haul chicken catchers); Nicks v. Koch Meat Co., Inc., 265 F. Supp. 3d 841 (N.D. Ill. 2017) (live-haul chicken catchers); Arocho v. Crystal Clear Bldg. Servs., Inc., No. 12CV2186, 2013 WL 1855978 (N.D. Ohio Apr. 30, 2013) (managers and project workers); Murton v. Measurecomp, LLC, No. 07CV3127, 2008 WL 5725631 (N.D. Ohio June 9, 2008) (measurement technicians); Champneys v. Ferguson Enters., Inc., No. IP 02-535-c, 2003 WL 1562219 (S.D. Ind. Jan. 16, 2003) (sales associates). Each of Plaintiffs' additional cases in which they claim nationwide certification was granted involved classes with

narrow job descriptions.[16]  See Pls.' Not. (ECF No. 70) (providing supplemental authority in support of their motion).

On the other hand, courts tend to deny conditional certification when job descriptions are varied.  See Smith v. Tradesman Int'l, Inc., 289 F. Supp. 2d 1369, 1372 (denying conditional certification when "the sole evidence of similarly situated employees . . . consists of three (3) identical affidavits by employees with different job titles, different job responsibilities, and who work in different geographic locations"); Salazar, 2008 WL 782803, at *7 (denying conditional certification when production employees were dissimilar "because their compensation structure, job duties and PPE vary from department to department").

The proposed class here includes all "production employees."[17] Am. Compl. ¶ 43 (ECF No. 27, at 7).  At oral argument, these were further defined by Plaintiffs' counsel as "employees who participate in the production process," including even those who

---

[16] Except Potter v. Dawn Food Products, which authorized a nationwide class of "manufacturing employees."  Potter, 2020 WL 6882908, at *3. Defendants distinguish Potter as rejecting the requirement to show "a widespread scheme, plan, or common experience," as required in this district, but the Potter court still found that "a common, unified policy" existed based on non-payment.  Id.  I find Potter unpersuasive, despite authorizing a broad manufacturing class, because it involved only a single company defendant, as discussed above.  Id.; see supra.

[17] Plaintiffs occasionally also use the term "manufacturing employees." Pls.' Mem. Ex. 4 ¶ 7 (ECF No. 52-4).

repair "[t]he equipment that's used in the production process"
because "it's still part of the day-to-day processing of the meat."
Tr. 5:24-25, 6:15-17 (ECF No. 71).   Notwithstanding counsel's
helpful clarification, this job description is impermissibly vague
as it could feasibly encompass nearly every plant employee.   Cf.
Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 706, 709
(E.D.N.C. 2011) (approving class definition narrowed from
overbroad "production").   Even the proposed representative
plaintiffs cast a wide and diverse net, including a knife operator,
a quality assurance technician, and a forklift operator.   Smith
Decl. ¶ 1 (ECF No. 52-1, at 1); Kolb Decl. ¶ 1 (ECF No. 52-2, at
1); Golightly Decl. ¶ 1 (ECF No. 52-3, at 1).   The opt-in plaintiffs
held equally varied jobs as material handlers, bacon slicers,
maintenance mechanics, general production employees, machine
operators (including "tux opr," "hot dog/flexi cell operator," and
"cliff hangar machine operator"), as well as cut floor and
arranger. Pls.' Mem. Ex. 4 (ECF No. 52-4).   Even though the record
does not contain job descriptions, the plaintiffs'
responsibilities based on these titles will inevitably differ.   I
cannot find that "all employees of a given company are similarly
situated simply because they claim violations of the FLSA by that
company."   Salmon v. XTO Energy, Inc., No. 19-CV-00768, 2020 WL
5803608, at *3 (E.D. Ark. Sept. 29, 2020).   This is particularly
so given the nature of the violations alleged in this case.

Cases sometimes permit varied job duties, but generally only when the employer has denied all non-exempt employees overtime, regardless of their actual job duties. See, e.g., Arocho, 2013 WL 1855978; Hane v. On Time Securing, Inc., No. 16-cv-2002, 2017 WL 4169646, at *4 (N.D. Ohio Sept. 20, 2017); Constantino v. STP Restaurants, Inc., No. 09CV1531, 2011 WL 2784583 (N.D. Ohio July 15, 2011); Murton, 2008 WL 5725631. In these cases, the employees' hourly pay rate made them similarly situated with respect to the violation alleged. See Hane, 2017 WL 4169646, at *4 (not requiring similar duties because "all hourly employees are typically non-exempt"); Constantino, 2011 WL 2784583, at *2 (finding that "all the hourly positions were subject to a common decision, policy, or plan"). These cases are not persuasive on the facts here because Plaintiffs allege that a specific type of employment activity (donning and doffing) is compensable and was not compensated, and therefore the court must examine whether the putative class is similarly situated with respect to that activity.

    iv. **FLSA Exemption Caselaw**

Lastly, much of Plaintiffs' caselaw involved FLSA actions over employers' exemption policies. In these cases, the debate is whether employees were misclassified as exempt, and thus are owed overtime. See 29 U.S.C. § 213(a) (listing employment roles exempt from overtime pay). Plaintiffs relied on many such cases here. See, e.g., Chin v. Tile Shop, LLC, 57 F. Supp. 3d 1075, 1083 (D.

Minn. 2014); <u>Pendlebury v. Starbucks Coffee Co.</u>, No. 04-CV-80521, 2005 WL 84500, at *4 (S.D. Fla. Jan. 3, 2005); <u>Champneys</u>, 2003 WL 1562219, at *2.  But these cases are not persuasive because the parties do not debate the putative class members' exemption status.

**B.  Plaintiffs Are Not Challenging a Single Uniform Pay Policy.**

Plaintiffs also have not challenged a uniform pay policy here. In addition to demonstrating that class members are similarly situated, in the Fourth Circuit, Plaintiffs must show that "they and potential plaintiffs together were victims of a <u>common policy or plan</u> that violated the law." <u>Choimbol</u>, 475 F. Supp. 2d at 564 (emphasis added).  Plaintiffs allege here only that they were not paid for certain time they vaguely suggest is compensable work. This is insufficient to connect all Defendants' companies, and the forty-five plants they operate, to a single policy or plan. Furthermore, Plaintiffs left unrebutted Defendants' proof that thirty different CBAs govern twenty-one of Defendants' facilities, requiring the court to conduct a Section 203(o) analysis for each. Defs.' Resp. Ex. A (ECF No. 55-1); Defs.' Resp. (ECF No. 55, at 15).  As explained in detail below, these shortcomings are fatal to any claim of a common plan or policy.

**1.  Plaintiffs Do Not Allege a Single Pay Practice Common to All Defendants' Facilities.**

Defendants argue that Plaintiffs "cannot show . . . that there has been a uniform plan, policy, or practice of non-payment for

34

donning and doffing activities." Defs.' Resp. (ECF No. 55, at 8).
Plaintiffs argue that they have identified a single policy, relying
mainly on the allegation -- repeated in each form declaration --
that they were not paid. Pls.' Reply (ECF No. 60, at 3). Class-
action FLSA plaintiffs may generally be entitled to an inference
that consistent non-payment results from a common policy or plan.
See De Asencio, 130 F. Supp. 2d at 663 (finding burden met when
"declarations allegedly show a consistent pattern of unpaid
work"); Bitner v. Wyndham Vacation Resorts, Inc., 301 F.R.D. 354,
360 n.5 (W.D. Wis. 2014) (finding it "far more likely that
[plaintiffs] were victims of a common policy" when they worked at
one facility rather than many). However, because Plaintiffs allege
violations across multiple companies and facilities, the court
cannot infer that non-payment resulted from a plan "common" between
Defendants' varied operations. Choimbol, 475 F. Supp. 2d at 564.

To conditionally certify this class, there must be a single
policy or plan across all facilities and companies. Conditional
certification is generally denied when plaintiffs work in
"multiple geographic locations around the country, over different
time periods, in offices run by different managers, without any
showing of a national policy." Mitchel, 2012 WL 4005535, at *4
(citing Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 688 (D. Md.
2010)); see also Purdham, 629 F. Supp. 2d at 549 (denying
conditional certification where there were "[n]o county-wide

guidelines"). Courts avoid presenting the jury with "multiple plants and multiple policies" when the jury "would be rightly confused in answering the simple question of whether 'the policy' was in compliance with FLSA." Carlson v. Leprino Foods Co., No. 05-CV-798, 2006 WL 1851245, at *5 (W.D. Mich. June 30, 2006). If a finding of liability at one location "would not necessarily require [the court] to also find liability at another location," conditional certification is inappropriate. England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005).

The fact that Plaintiffs bring this action against forty-five facilities and three operating companies cannot be understated. See Simons, 2011 WL 4345825, at *4 n.3 ("Plaintiff elected to pursue certification of a broad class covering employees of two, apparently distinct, corporations . . . . That choice has the natural consequence of requiring that she provide support for the breadth sought."). Despite their broad claims, Plaintiffs have done little to allege "an identifiable factual nexus that binds" putative plaintiffs together across these facilities and companies. Koch Meat Co., 265 F. Supp. 3d at 849 (quoting Briggs v. PNC Fin. Servs. Grp., No. 15-CV-10447, 2016 WL 1043429 (N.D. Ill. Mar. 16, 2016)). Even when considering offices and facilities within a single company, courts require evidence and allegations showing that a common policy applied across each. See Faneuil II, 2016 WL 11673838, at *5 (granting conditional certification after

36

the plaintiffs "provided employee handbooks and excerpts from PowerPoint presentations" from multiple locations"); Helmert, 2009 WL 5066759, at *18 & n.16 (observing different pay policies at different plants). Plaintiffs have not credibly alleged such a nexus. In fact, the declarations -- Plaintiffs' only evidence here -- are silent on the policies at other facilities, let alone other companies. See, e.g., Smith Decl. ¶ 9 (ECF No. 52-1, at 2) (stating only that she "observed that Smithfield did this to other production employees"). The declarations' vague statements cannot connect all forty-five facilities and three operating companies to a single plan.

In addition, without weighing conflicting evidence, or resolving factual disputes, I easily conclude that a wide array of pay practices apply among employees covered by Plaintiffs' putative class. This is because Defendants submitted sworn declarations stating that multiple different pay practices are in place at the various facilities. Defs.' Resp. Exs. B-X, Z-UU (ECF Nos. 55-2 to 55-15, 56-1 to 56-32). The court cannot at this stage resolve whether those policies rebut Plaintiffs' contrary allegations. But even Defendants' uncontradicted evidence indicates that their pay policies are diverse and complicated. Cf. Basco v. Wal-Mart Stores, Inc., No. Civ.A. 00-3184, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (denying conditional certification when "potential opt-in plaintiffs . . . were subject

to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis"). At minimum, the complexity of the policies at the thirty-seven plants for which Plaintiffs have submitted no evidence caution against including those facilities.

### 2. In Light of Section 203(o) of the FLSA, the Existence of So Many CBAs Weighs Against Certification.

Section 203(o) was designed to promote the collective bargaining process. Sepulveda v. Allen Family Foods, Inc., 591 F.3d 209, 211 (4th Cir. 2009), cert. denied, 462 U.S. 838 (2010). Under this provision, parties may decide as part of a CBA whether certain donning and doffing is compensable:

> [i]n determining . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o). The Supreme Court has defined "clothes" as "items that are both designed and used to cover the body and are commonly regarded as articles of dress." Sandifer v. U.S. Steel Corp., 571 U.S. 220, 227 (2014). Applying that definition in Sandifer v. United States Steel Corp., the Supreme Court held that donning and doffing protective gear can constitute changing clothes. Id. at 232. The Court also analyzed factually whether

specific protective gear was clothing under Section 203(o).  Id. at 233.  Therefore, whenever a CBA applies in a donning and doffing case, courts must analyze (1) whether the specific PPE constitutes clothing; and (2) whether, if clothing, that clothing is covered by the specific CBA at issue.  See id.  This analysis is fact intensive.  See Perez v. City of New York, 832 F.3d 120, 127 (2d Cir. 2016) (leaving the 203(o) analysis for the district court because "the success of . . . these arguments is fact-dependent").

In this case, thirty CBAs govern twenty-one union facilities. Defs.' Resp. Ex. A (ECF No. 55-1); Defs.' Resp. (ECF No. 55, at 15).  Defendants have provided copies of the governing CBAs, as well as extensive descriptions about how those policies vary from facility to facility.  See Defs.' Resp. Ex. A (ECF No. 55-1). Plaintiffs have not disputed either the relevance of the CBAs, or their content.  See Tr. 7:24-8:5 (ECF No. 71); Defs.' Resp. Not. (ECF No. 72, at 2).  The existence of these various CBAs alone creates a material and readily apparent distinction among the putative plaintiffs employed at Defendants' union plants, and between union and non-union plaintiffs generally.  See Barber v. Peco Foods, Inc., No. 06-02054, at 9 (N.D. Ala. Aug. 22, 2007) ("As five of the six plants owned by Defendant operate under a CBA, the impact of this issue will be dramatic and will obviously result in significantly different results between the six different plants.").  Because the law will eventually require

39

examination of each item of PPE in the context of each CBA, the putative plaintiffs bound by these CBAs are dissimilarly situated.

Contrary to Plaintiffs' argument, denial of conditional certification on this basis does not reach the merits of any Section 203(o) analysis. Rather, it properly considers whether the CBAs will cause "substantial individualized determinations for each class member." Purdham, 629 F. Supp. 2d at 549; see also MacGregor, 2012 WL 2974679, at *2. It is highly unlikely that the Section 203(o) analysis for each CBA would be identical because their terms -- already in the record -- vary widely. See Defs.' Resp. Ex. Y (ECF No. 56-10) (summarizing donning and doffing language). Further, only some facilities are covered by the CBAs. As the court in Purdham v. Fairfax County noted, "the [c]ourt cannot ignore salient facts that suggest that this case, as presented here, is not a suitable vehicle for a collective action." Purdham, 629 F. Supp. 2d at 552. In fact, "[f]ew of the most relevant facts" pertaining to the CBAs "will be common to the proposed class as a whole." Id. It would therefore be an inappropriate use of the court's discretion to facilitate notice to the putative class sought here.

Plaintiffs argue that Section 203(o) relates to damages, and therefore is "a premature consideration" here. Pls.' Reply (ECF No. 60, at 7); Tr. 8:2-3 (ECF No. 71) (arguing whether "work was covered by a CBA . . . [is] an issue really as to damages"). In

support, they cite a 2008 Northern District of Alabama case granting conditional certification. Pls.' Reply (ECF No. 60, at 7) (citing <u>Andrews v. U.S. Pipe & Foundry Co., Inc.</u>, No. 06-CV-1645, 2008 WL 11422083, at *1-2 (N.D. Ala. July 7, 2008), <u>clarified by</u> 2009 WL 10703062 (N.D. Ala. Aug. 21, 2009)). However, that case did not hold that CBAs were relevant only to damages. <u>See</u> <u>Andrews</u>, 2008 WL 11422083, at *1.

Section 203(o) cannot apply only to damages. The statutory language places certain time spent changing clothes outside the scope of the FLSA when it is addressed in a binding CBA. 29 U.S.C. § 203(o); <u>see also</u> <u>Turner v. City of Phila.</u>, 262 F.3d 222, 224 (3d Cir. 2001) (finding that "Section 203(o) . . . provides a specific exclusion"); <u>Hosler v. Smithfield Packing Co., Inc.</u>, No. 07-CV-166, 2010 WL 11565332, at *4 (E.D.N.C. Aug. 27, 2010) (agreeing that Section "203(o) is not an exemption, but rather a definitional exclusion"), <u>report and recommendation adopted</u> 2010 WL 11565563 (E.D.N.C. Sept. 27, 2010). Therefore, if a company does not compensate an employee for donning and doffing because a CBA conforming to Section 203(o) excuses it from doing so, the FLSA has simply not been violated. As such, the court can and should consider now whether the putative plaintiffs in the proposed nationwide class are similarly situated in light of the thirty applicable CBAs. As they are not, conditional certification should be denied.

41

3.   **Addressing Unique Plaintiff Defenses is Inappropriate and Unnecessary to the Recommendation.**

In their motion opposing certification, Defendants also raise several defenses against individual plaintiffs. Defs.' Resp. (ECF No. 55, at 24-26). In particular, Defendants argue that one named plaintiff and six opt-in plaintiffs are time-barred under the FLSA, id. at 24-25, and that some putative plaintiffs released their FLSA claims during prior class-action litigation against Defendants, id. at 26 (citing FLSA class actions against Defendants). Defendants also submitted evidence that they never employed two plaintiffs. Defs.' Resp. Ex. G ¶ 12 (ECF No. 55-7, at 5); Defs.' Resp. Ex. KK ¶ 9 (ECF No. 56-22, at 3). And one plaintiff signed a settlement releasing any FLSA claims. Defs.' Resp. Ex. Z (ECF No. 56-11, at 23, 26). Plaintiffs respond that it is inappropriate at this stage to address these differences between putative class members. Pls.' Reply (ECF No. 60, at 6). I agree.

If some "plaintiffs are ineligible to participate in this litigation, defendants may raise this issue again at step two in a motion for decertification." Galvan v. San Jose Mexican Restaurant, No. 16-CV-39, 2016 WL 6205783, at *2 (E.D.N.C. Oct. 24, 2016). Courts generally "conditionally certif[y] collective actions despite questions about the employment status of the named plaintiff and the potential opt-in plaintiffs." Leon, 2016 WL

2825073, at *4.   A significant portion of Defendants' caselaw on this subject concerns the second stage of class certification. See, e.g., Gatewood, 2009 WL 8642001; Marshall v. Amsted Rail Co., No. 10-cv-0011, 2012 WL 5499431 (S.D. Ill. Nov. 13, 2012); Lugo, 737 F. Supp. 2d 291.   Therefore, Defendants' arguments singling out specific named or opt-in plaintiffs do not factor into my recommendation.

C.   **Concerns of Fairness and Judicial Economy Counsel Against Exercising Discretion Here.**

Ultimately, conditional certification is an exercise of the district court's discretion.   Edwards, 2021 WL 1174724, at *4. This discretion is "not unfettered." Purdham, 629 F. Supp. 2d at 547.   "Conditional certification is appropriate when it would serve judicial efficiency, and the court must be mindful that granting conditional certification expands the scope of the litigation and begins a process of class-wide discovery." Kirkpatrick, 2017 WL 3841858, at *4 (citations omitted).   Enforcing the plaintiff's modest factual burden prevents abuse of the class-action mechanism.   Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003) (citing White v. Osmose, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).   Because discovery using Plaintiffs' proposed nationwide class would be broad and burdensome, and a trial of the putative class unmanageable,

concerns of both fairness and judicial economy weigh against an exercise of discretion in this case.

### 1.    Fairness Considerations

In evaluating whether to grant conditional certification, "the Court should be cautious to avoid authorizing a 'fishing expedition' or unduly burdening the defendants." Edwards, 2021 WL 1174724, at *4 (citing Pettenato v. Beacon Health Options, Inc., 425 F. Supp. 3d 264, at 283 (S.D.N.Y. 2019) (warning against authorizing broad notice that burdens defendant)). Thus, the court must analyze whether the burden that would be imposed on Defendants is warranted considering Plaintiffs' relative factual showing.

In opposing conditional certification, Defendants have expended extensive effort supporting their argument that discovery would be burdensome. Defs.' Resp. (ECF No. 55, at 26-30). They retained Dr. Fernandez, who estimated that time studies of donning and doffing activities at all forty-five facilities could potentially take a five-person team twelve to sixteen months for data collection and an additional fourteen to eighteen months for analysis, with an estimated cost of $7.8 million. Fernandez Decl. ¶¶ 18-19 (ECF No. 56-33, at 5). Defendants represent that the list of "massive" facilities could "include recently constructed distribution centers, multi-building slaughterhouses, and facilities that prepare ready-to-cook or ready-to-eat food products." Defs.' Resp. (ECF No. 55, at 28). They also have

44

produced unrebutted evidence that certification of the class Plaintiffs defined would affect forty-five facilities and upwards of 68,800 employees. Defs.' Resp. Ex. A (ECF No. 55-1). Plaintiffs do not dispute these numbers. Tr. 10:21-25 (ECF No. 71). In addition to Defendants' evidence, Plaintiffs' own declarations list many different job descriptions. Pls.' Mem. Ex. 4 (ECF No. 52-4).

Plaintiffs' briefing does not address the relative breadth and burden of discovery facing Defendants if the court authorizes notice. See Pls.' Reply (ECF No. 60, at 7-8). Plaintiffs have represented that they believe these issues are "for later" and "not appropriate for [the] conditional certification stage." Tr. 13:14-20 (ECF No. 71). However, the court cannot ignore that Plaintiffs are asking for broad notice. Cf. Simons, 2011 WL 4345825, at *3 (refusing to "authorize notice to a broad class when significant questions remain as to the scope of the class"). Plaintiffs are asking this court to require that Defendants defend multiple companies and facilities, and potentially expend millions of dollars, based on sixteen essentially identical declarations that do not even address thirty-seven of Defendants' forty-five facilities.

Plaintiffs remind the court about the general fairness and procedural concerns to class-action plaintiffs prompting § 216(b), Pls.' Mem. (ECF No. 60, at 8), including the intent to provide

"plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," Hoffmann-La Roche, 493 U.S. at 170.   If the court adopts this recommendation, these policy concerns are not discounted.   However, broad notice without a greater showing that putative plaintiffs are similarly situated amounts to an impermissible fishing expedition, and at minimum is an unjustified burden.   Edwards, 2021 WL 1174724, at *4. Defendants are thus entitled to contest notice on these grounds.

## 2.   Judicial Economy

The court must also be cognizant of the ultimate manageability of the putative class.   Section 216(b) "is based on a theory of judicial economy, under which the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Syrja, 756 F. Supp. 2d at 689 (quoting Hoffmann-La Roche, 493 U.S. at 170) (emphasis in original) (cleaned up)).   The court must "screen[] unmanageable or judicially inefficient classes." Stone, 2014 WL 5410628, at *8; see also Hoffmann–La Roche, 493 U.S. at 170-71 ("[T]he court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.").

The putative class Plaintiffs describe would likely tax the court's resources.   Defendants have alleged that it would take

them six weeks to put on their evidence.[18]  Defs.' Resp. (ECF No.
55, at 29).  Courts must consider coherent trial management.  See
Gatewood,  2009  WL  8642001,  at  *20  (decertifying  previous
conditional certification order) (quoting Thiessen v. Gen. Elec.
Capital Corp., 996 F. Supp. 1071, 1084 (D. Kan. 1998)).  Without
crediting Defendants' calculations, experience counsels that any
case against three companies operating a cumulative forty-five
facilities nationwide would take significant trial time.  Thirty
applicable CBAs is also a significant complicating factor.  See
id. at *19 ("[T]he availability of the § 203(o) defense to some
but not all of the putative class members clearly poses significant
management concerns." (cleaned up)) (quoting Anderson v. Cagle's,
Inc., 488 F.3d 945, 954 n.8 (11th Cir. 2007), cert. denied 553
U.S. 1093 (2008)).

     If this case proceeds, these same concerns create a high risk
of jury confusion.  Cf. Smith v. Brown & Williamson Tobacco Corp.,
174 F.R.D. 90, 98 (W.D. Mo. 1997) ("[N]either party can seriously
expect a jury's full attention and consideration for the length of
such proceedings . . . [.] This is not an indictment of the class

---

[18] This estimate is premised on only two to four fact witnesses per
facility (107-117 fact witnesses total) and five to six days of expert
testimony. Defs.' Resp. (ECF No. 55, at 28-29). Defendants compare their
case to Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 450 (2016), which
took two weeks to try against one facility and generated 744 videotaped
observations of donning and doffing, Defs.' Resp. Pls.' Notice Suppl.
Authority ("Defs.' Resp. Not.") (ECF No. 72, at 6).

action procedure, but an acknowledgment of human nature that will surely be present among the jurors."). As Defendants argue, at minimum, the jury might be presented with evidence of forty-five facilities and be required to make informed decisions about each. Defs.' Resp. Not. (ECF No. 72, at 6). The sheer number of employees with different job descriptions further exacerbates this problem. See Desmond v. All., Inc., No. CCB-14-3499, 2015 WL 2165115, at *3 (D. Md. May 7, 2015) (advocating certification "if differences between individuals (whether with the same job or different job titles) do not make clear that a collective action would be unmanageable"). In short, Defendants have presented the court with extensive evidence that a trial of the putative class would pose manageability difficulties.

In response, Plaintiffs have not engaged with Defendants' arguments that this class is unmanageable. See Tr. 34:1-35:14 (ECF No. 71). Instead, they argue that the court should not consider "whether each putative class member would ultimately remain a class member after receiving notice of this action." Pls.' Reply (ECF No. 60, at 6). As with much of their briefings, Plaintiffs simply repeat their claim that such arguments are premature during conditional certification. However, Freeman v. Wal-Mart Stores, Inc. is instructive:

> In light of the fact that [the defendant] is one of the largest employers in the world, it is incumbent upon Plaintiff to propose a class that is sufficiently

> defined and manageable from the outset.  It would be a
> waste of the Court's and the litigants' time and
> resources to notify a large and diverse class only to
> later determine that the matter should not proceed as a
> collective action because the class members are not
> similarly situated.

256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (noting that the proposed

class "includes more than 7,000 current and former employees" with

"material differences in the duties and responsibilities of those

employees").  Plaintiffs similarly seek to notify a very large

class, and they have the same duty to design a manageable one.

**D.    The Current State of the Law in the Fourth Circuit Should
        Have More Directly Informed Plaintiffs' Showing.**

The compensability of donning and doffing under the FLSA is

"long established." Wojciehowicz v. Chemours Co. FC, LLC, No. 20-

cv-00355, 2021 WL 4255618, at *4 (S.D. W. Va. Sept. 17, 2021)

(citing Steiner v. Mitchell, 350 U.S. 247, 256 (1956) (concerning

showering and laundering at battery plant to remove

contaminates)).  Donning and doffing cases have been litigated for

decades, even going back to the Supreme Court's decision in

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).  In 2011,

the Fourth Circuit held that "time spent donning and doffing

protective gear at the beginning and end of each workday is

compensable as 'work' under the FLSA." Perez v. Mountaire Farms,

Inc., 650 F.3d 350, 360 (4th Cir. 2011), cert. denied, 565 U.S.

1241 (2012); see also Sepulveda, 591 F.3d at 218-19 (holding that

compensation can be waived by a CBA).   In short, this is not a novel legal question.

Furthermore, donning and doffing continues to be frequently litigated.   See Leanne Gould et al., Wage and Hour Law: Compliance and Consequences, 36-1 ABIJ 16, 17 (2017) ("Litigation involving 'off the clock' work . . . has also increased.").   Indeed, donning and doffing has already been litigated extensively within the meatpacking industry.   Cf. Michael Carlin, Bringing Home the Bacon: Mealtime Donning and Doffing Under the FLSA in the Meat Processing Industry, 39 Okla. City U. L. Rev. 191 (2014).   Approximately a decade before the current case, Defendant Smithfield Packing Co. was a defendant in several donning and doffing cases.   See, e.g., Lewis v. Smithfield Packing Co., No. 07-CV-166, 2010 WL 11565330 (E.D.N.C. Aug. 23, 2010), report and recommendation adopted by 2010 WL 11565500 (E.D.N.C. Sept. 27, 2010); Horne v. Smithfield Packing Co., No. 09-CV-42, 2011 WL 4443034 (E.D.N.C. Sept. 23, 2011).   All parties have benefited from this well-developed body of caselaw.

The CBAs at issue in this case were also negotiated in light of this same caselaw.   In fact, in Hosler v. Smithfield Packing Co., Inc., the district court previously resolved whether certain donning and doffing activities were compensable at one of Defendants' facilities.   Hosler, 2010 WL 11565332, at *8.   A CBA was negotiated while that case was pending.   Tr. 20:12-20 (ECF No.

50

71). Therefore, the CBAs here have inherited from a robust legal dialogue.

Because this is not a novel legal issue, FLSA class-action plaintiffs with plausible claims, represented by counsel, should be able to at least allege facts that more closely align with requirements currently enforced in the Fourth Circuit. While such caselaw does not create a heighted evidentiary burden, it did provide Plaintiffs with an opportunity to prepare more precise allegations of harm and find more tailored supporting evidence. Their form declarations reflect no effort to do so.

E.  **Plaintiffs May Continue Their Case Despite Denial.**

If this recommendation is adopted, denial of conditional certification "is not necessarily a final determination of whether the matter may proceed as a collective action."[19]  Edwards, 2021 WL 1174724, at *4 (quoting Halle v. W. Penn Allegheny Health Sys., 842 F.3d 215, 225 (3d Cir. 2016)).  This is because conditional certification is only about "the sending of court-approved written

---

[19] Defendants imply that the court could potentially collapse the two-stage certification inquiry in this case and deny certification outright. See Defs.' Resp. (ECF No. 55, at 4 n.2) (quoting Purdham, 629 F. Supp. 2d at 547-48).  When utilized, collapsing the inquiry is generally most appropriate if at least some discovery has been conducted.  See Adams, 93 F. Supp. 3d at 453 n.10.  In this case, no discovery has taken place, and the named plaintiffs may choose to "re-define the contours of the proposed collective action."  Edwards, 2021 WL 1174724, at *4 (quoting Halle, 842 F.3d at 225).  Accordingly, I have not collapsed the inquiry in this Report.

notice to employees" who must still thereafter opt into the lawsuit. Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013). Either way, however, the parties are agreed that joined plaintiffs could proceed individually. Tr. 21:8-21, 38:1-14 (ECF No. 71).

## IV.   RECOMMENDATION

For the foregoing reasons, this Report RECOMMENDS that the district court DENY Plaintiffs' Motion for Conditional Certification (ECF No. 54).

## V.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommenda-tions to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above

will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER,
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

December 21, 2021